IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TOMMY DEMINTO WHITE, #84837**                          **PLAINTIFF**

**V.**                                       **CIVIL ACTION NO. 1:16-cv-101-JCG**

**JAQUELINE BANKS, MARSHALL
TURNER, HUBERT DAVIS,
TIMOTHY BARNES, KENNETH
POWELL, ADRIAN KEYS,
CHRISTOPHER WOOLMAN,
THOMAS BYRD, REGINA REED, and
ANTHONY BEASLEY**                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Complaint filed pursuant to 42 U.S.C. § 1983 by Plaintiff Tommy Deminto White, a postconviction inmate in the custody of the Mississippi Department of Corrections (MDOC) who is proceeding *pro se* and *in forma pauperis*. Defendants are law enforcement officers working at the South Mississippi Correctional Institute (SMCI) in Leakesville, Mississippi. An omnibus hearing, which also operated as a *Spears* hearing, was held on December 5, 2016. (ECF No. 29).[1] Defendants have filed a Motion for Summary Judgment (ECF No. 38) and Memorandum in Support (ECF No. 39), alleging that Plaintiff failed to exhaust available administrative remedies with respect to some of his claims. Regarding Plaintiff's remaining claims, Defendants assert that Plaintiff has failed to enunciate a constitutional violation. Plaintiff has

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

responded to the Motion for Summary Judgment (ECF Nos. 40, 41, 42). Having reviewed the submissions of the parties, the record, and applicable law, the Court finds that Defendants' Motion for Summary Judgment should be GRANTED for the reasons submitted by Defendants.

## BACKGROUND

In 2009, Plaintiff was convicted of possession of a firearm by a convicted felon. He was sentenced to ten years in the custody of MDOC as a habitual offender. Plaintiff has served eight years of his sentence. This litigation concerns the conditions of Plaintiff's confinement at SMCI where he has been housed for at least three years.

Plaintiff professes the Rastafari religion. He objects to MDOC requiring him to cut his hair. MDOC grooming regulations prohibit long hair and beards. While at SMCI, Plaintiff has been held down in a chair to have his hair cut on at least two occasions. Plaintiff claims that the grooming policy violates his First Amendment right to freely exercise his religion.

As part of his religion, Plaintiff has taken a vow to refrain from eating meat. He wants to be provided a vegetarian diet food tray. Plaintiff asserts that he has spoken with a chaplain on several occasions regarding receiving a vegetarian diet tray, yet Plaintiff continues to be served meals with meat.

Plaintiff was issued eight RVRs by Correctional Officer Linda Smith. Officer Smith found Plaintiff showering before the showers opened at 6:00 a.m. on multiple occasions. Plaintiff's explanation was that he had to be at work early

and needed to shower beforehand. Plaintiff was found guilty of four of the RVRs, not guilty of three RVRs, and one RVR was dismissed. The punishment received for each of the four RVRs was 30-days without privileges. All four RVRs were affirmed on appeal. Plaintiff asks the Court to expunge the RVRs from his MDOC record.

Plaintiff was housed in an area of SMCI where he was able to work making garments and taking night classes. Plaintiff alleges that he was transferred to a more dangerous area of the prison in retaliation for making complaints about Officer Smith. Plaintiff submits that he is not gang affiliated but has been moved to a dangerous area where he is housed with gang members. Plaintiff also believes that personal items were stolen from him by two officers in retaliation for him complaining about Officer Smith.

## DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most

3

favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

B.  Plaintiff failed to exhaust administrative remedies with respect to two of his five claims

1.  The PLRA's exhaustion requirement

Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), prisoners are required to exhaust available administrative remedies before filing a conditions-of-confinement lawsuit:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA's exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply

4

> with the system's procedural rules unless noncompliance
> carries a sanction . . .

*Woodford*, 548 U.S. at 95.

The United States Supreme Court has held that § 1997e's exhaustion "language is 'mandatory.'" *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [any special] circumstances into account." *Id.* "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.*

"The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted." *Cowart v. Erwin,* 837 F.3d 444, 451 (5th Cir. 2016). The United States Court of Appeals for the Fifth Circuit takes a "'strict approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must exhaust available administrative remedies *properly*." *Id.* (emphasis in original) (quotation omitted). Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). Dismissal is mandatory where a prisoner fails to properly exhaust the available prison grievance process before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "[J]udges may

resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon,* 596 F.3d at 272.

MDOC utilizes a "formal two-step process for handling inmate grievances." *Yankton v. Epps,* 652 F. App'x 242, 245 (5th Cir. 2016) (citing Miss. Code § 47-5-801, *et seq.*; *Wilson v. Epps,* 776 F.3d 296, 300 n.2 (5th Cir. 2015)).

> "[T]o ensure their right to use the formal [ARP]," inmates "must make their request to the Adjudicator in writing within a 30 day period after an incident has occurred." [Inmate Handbook, MDOC, ch. VIII, sec. IV.] They are, however, discouraged from making repetitive requests and "are encouraged to continue to seek solutions to their concerns through informal means." [*See id.*]
>
> Prior to the "first step" of this procedure, the Adjudicator screens the request to determine whether it meets specified criteria. [*See id.* at ch. VIII, sec. V.] If a request fails to meet that criteria, the Adjudicator will reject it and notify the inmate via Form ARP-1. [*See id.* at ch. VIII, sec. VI.] If the request meets the criteria, however, the Adjudicator will accept it into the ARP, and the request will then proceed to the first step. At the first step, the appropriate MDOC official receives the request via Form ARP-1 and provides a "first-step response" to the request via Form ARP-2. If the inmate is satisfied with this first-step response, he does not need to do anything further. If unsatisfied, however, the inmate may then proceed to the "second step" by indicating as much on the same Form ARP-2. At the second step, another appropriate MDOC official, such as a warden, provides the "second-step response" via Form ARP-3. If unsatisfied with the second-step response, the inmate may then bring a claim in court. [*See* Inmate Handbook, ch. VIII, sec. IV.]

*Id.*

Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). The prison's failure to timely respond to a grievance does not absolve the prisoner of completing the ARP process:

> This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the *last* step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance. This is true both under the terms of the [ARP] and as a matter of the law of this circuit.

*Wilson v. Epps*, 776 F.3d 296, 301 (2015) (citations omitted).

2. <u>Plaintiff's vegetarian diet claim was not fully exhausted before Plaintiff filed suit</u>

MDOC's policy on religious diets provides: "All religious diets must be approved by the Agency Chaplain Director and Director of Food Services. If approved, the diet will be submitted to the appropriate food services location with dates and times for preparation." (ECF No. 25, at 42).

Plaintiff is suing Chaplain Kenneth Powell, who he alleges denied him a vegetarian food tray. Plaintiff maintains that he has spoken with Chaplain Powell on several occasions, but he has not received a vegetarian diet tray. Plaintiff filed his Complaint in this Court on March 21, 2016. He received a first-step response regarding his religious diet grievance on November 19, 2015. (ECF

7

No. 41-3, at 1). The response stated: Chaplain Powell has explained to you in detail the policy. Your ARP is denied." *Id.*

Plaintiff filed another grievance regarding the same issue and received a first-step response on September 20, 2016. The response advised that Plaintiff did not file a complaint with the chaplain's office before filing an ARP grievance. (ECF No. 41-3). Plaintiff received a second-step response on December 1, 2016. *Id.* However, he filed suit on March 21, 2016, before he received the second-step response. The law is clear that Plaintiff was required to fully exhaust the two-step administrative process *before* filing suit. The claim regarding a vegetarian diet is barred by 42 U.S.C. §1997e(a).

3. <u>Plaintiff's theft claims were not fully exhausted before Plaintiff filed suit</u>

Plaintiff alleges that two officers stole his radio and headphones in June 2016, in retaliation for Plaintiff having complained about Officer Smith. Plaintiff received a first-step response regarding the alleged radio theft on July 19, 2016. He received a second-step response on August 24, 2016. The alleged theft of the radio occurred after Plaintiff filed his Complaint on March 21, 2016. Plaintiff did not exhaust his administrative remedies with respect to his radio claim before filing suit. The claim is barred by 42 U.S.C. §1997e(a).

Plaintiff has submitted no proof that he filed any grievances with respect to the alleged theft of his headphones. Plaintiff has offered a first-step response dated October 28, 2013, regarding the alleged theft of his thermal

undergarments. Plaintiff signed the response but did not check the box stating that he was unsatisfied with the response. Plaintiff did not properly exhaust the grievance process with respect to any of his theft of personal property claims. The claims are barred by 42 U.S.C. §1997e(a).

C.  Plaintiff's claims are frivolous

   1.  Plaintiff's claims regarding theft of personal property are frivolous

Plaintiff's claims for theft of personal property are furthermore frivolous. The deprivation of property by state officials – whether negligent or intentional – does not violate the due process clause of the Fourteenth Amendment so long as adequate post-deprivation remedies exist. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Mississippi provides an adequate postdeprivation remedy for the loss of property through other means, including actions for conversion and takings without just compensation under the Mississippi Constitution. *See Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994) (conversion); *Johnson v. King,* 85 So. 3d 307, 310-11 (Miss. Ct. App. 2012) (Mississippi Takings Clause). Plaintiff has not alleged a cognizable federal claim, and his theft of personal property claims should be dismissed as frivolous.

   2.  Plaintiff's claim regarding MDOC's hair-grooming policy is frivolous

Plaintiff alleges that MDOC's grooming policy violates his right to freely exercise the Rastafari religion. MDOC's policy provides: "Male inmate's hair will be kept clean and neatly cut so the hair does not fall below the collar and is not more than 3" in length." A letter responding to Plaintiff's complaint from

Chaplain Powell provides: "Per your religious selection as with all religions, offenders must maintain the stated policy for <u>safety, security, identification, and hygiene purposes</u> . . . ." (ECF No. 24, at 8) (emphasis in original).

The Fifth Circuit has consistently held that prison hair and beard grooming policies are rationally related to the achievement of valid penological goals. In *Hicks v. Garner,* the Fifth Circuit found that a Texas prison's grooming policy did not violate the First Amendment rights of a Rastafarian prisoner. The claim was dismissed as frivolous:

> The rule is well established that inmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals. Equally clear in this circuit is the proposition that prison grooming regulations, including specifically the requirement that a prisoner cut his hair and beard, are rationally related to the achievement of valid penological goals, such as security and inmate identification.

*Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).

Rastafarian prisoners have previously challenged the MDOC policy that Plaintiff challenges. In *Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77 (5th Cir. 1992), the Fifth Circuit found that the Rastafarian plaintiffs had indeed lost the absolute freedom of religious expression by being subjected to the grooming policy but that the sacrifice was one required by their incarceration. The infringement of the prisoners' religious rights caused by the grooming policy was found valid because it was rationally related to the legitimate penological interests of identification and security. *Id.* at 80. Plaintiff's claim that MDOC's

hair grooming policy violates his constitutional right to freely exercise his religion is frivolous.

3. <u>Plaintiff's claims regarding RVRs are frivolous</u>

Plaintiff was found guilty of four RVRs and punished with a 30-day loss of privileges for each. The RVRs were affirmed on appeal. Plaintiff requests that the Court expunge the RVRs from his prison record.

Placement in administrative segregation or loss of prison privileges generally does not implicate a liberty interest because those punishments do not represent "the type of atypical significant deprivation which a State might conceivable create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). "Liberty interests protected by the Due Process Clause 'will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *King v. Sims*, Civil Action No. 2:07-cv-136-MTP, 2009 WL 2497154, *5 (S.D. Miss. Aug. 14, 2009) (quoting *Sandin,* 515 U.S. at 483-83).

The four 30-day loss of privileges that Plaintiff received did not impose an atypical and significant hardship on Plaintiff in relation to ordinary prison life. Further, Plaintiff has no constitutional right to the existence of a grievance procedure, and no due process liberty interest in having his grievance resolved to his satisfaction. *Geiger v. Jowers,* 404 F.3d 371, 374-75 (5th Cir. 2005);

*Guillory v. Hodge*, No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015). Plaintiffs' claims regarding the RVRs are frivolous.

    4.    <u>Plaintiff's claim that an intra-prison transfer violated his constitutional rights is frivolous</u>

After complaining about Officer Smith, Plaintiff was transferred to an area of the prison where he believes he is in danger because of gang activity. This has caused him to stress and fear for his safety. Plaintiff maintains that he is not gang affiliated and should not be housed with gang members. He requests that the Court order that he be transferred.

Plaintiff has provided a letter dated September 1, 2015, from Superintendent Banks denying him a transfer. The letter states, "Transfer request is denied at this time. You are appropriately housed." (ECF No. 24, at 4). A letter from Banks dated January 6, 2016, informs Plaintiff for a second time that "[r]equest for housing changes can be submitted to your Case Manager or a Supervisor over the building you are assigned." *Id.* at 16. Banks responded to Plaintiff's subsequent complaint with a note dated April 21, 2016, advising Plaintiff: "Your life is not in danger. Transfer has been requested. The final decision is made by Classification." *Id.* at 22. A first-step response on the issues provides: "Offender White was allowed to put in for a paid transfer. Transfer forwarded to ADOS for approval. The final decision to be made at a higher level." (ECF No. 25, at 12).

Inmates have neither a protectable property or liberty interest in any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms,* 459 U.S. 460, 468 (1983); *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995); *McCord v. Maggio,* 910 F.2d 1248, 1250 (5th Cir. 1990). An inmate's disagreement with a classification is insufficient to establish a constitutional violation. *Neals,* 59 F.3d at 533. Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord,* 910 F.2d at 1250.

Plaintiff furthermore has not stated a claim for failure to protect under the Eighth Amendment because he has not alleged circumstances posing a substantial risk of serious harm nor facts suggesting that Defendants were deliberately indifferent to Plaintiff's health and safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Plaintiff has identified no particular individuals who posed a threat to him. A generalized warning by Plaintiff that he should not be housed with gang members is not sufficient to establish Defendants' knowledge of an excessive risk to Plaintiff. Gangs are an unfortunate but unavoidable presence in prison life and create a "logistical nightmare" for prison administrators. *Babcock v. White,* 102 F.3d 267, 268 (7th Cir. 1999); *see Florence v. Bd. of Chosen Freeholders of Cty. of Burlington,* 132 S. Ct. 1510, 1518 (2012); *Lewis v. Richards,* 107 F.3d 549, 557 (7th Cir. 1997 (Flaum, J., concurring); *Depriest v. Walnut Grove Corr. Auth.,* No. 3:10-cv-663-CWR-FKB, 2015 WL 3795020, \*13

(S.D. Miss. June 10, 2015), *appeal dismissed sub. nom. Depriest v. Fisher,* No. 15-60488, 669 F. App'x 209 (5th Cir. 2016).

Plaintiff also cannot recover because he has suffered no physical injury. "No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18." 42 U.S.C. §1997e(e). Plaintiff's claim regarding his housing transfer is frivolous.

## CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (ECF No. 38) is **GRANTED**. Plaintiff's claim regarding an alleged denial of a religious diet is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. Plaintiff's claims regarding theft of personal property, MDOC's grooming policy, the RVRs issued by Officer Smith, and the intra-prison transfer are **DISMISSED WITH PREJUDICE** because they are frivolous. Dismissal of this action counts as a strike pursuant to 42 U.S.C. § 1997e(e). A separate final judgment will be entered as instructed by Federal Rule of Civil Procedure 58.

**SO ORDERED**, this the 6th day of September, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE